# COURT OF APPEALS
# DECISION
# DATED AND FILED

## April 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1987-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF4644

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

OSCAR E. RASH,

    DEFENDANT-APPELLANT.

       APPEAL from a judgment of the circuit court for Milwaukee County: JOHN A. FRANKE, Judge. *Affirmed*.

       Before White, C.J., Colón, P.J., and Donald, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Oscar E. Rash appeals from the judgment of conviction, entered upon a jury's verdict, for first-degree reckless homicide as a party to a crime and second-degree recklessly endangering safety. Rash argues that the circuit court erred when it denied his motion for mistrial after the State disclosed police body camera footage during his trial. Upon review, we affirm.

## BACKGROUND

¶2      The State charged Rash in a criminal complaint with one count of first-degree intentional homicide as a party to a crime and one count of second-degree recklessly endangering safety, arising out of two incidents in October 2021. The first incident was the shooting of Kvon Hinton in his vehicle near North 76th Street and West Mill Road in Milwaukee; Hinton died at the scene, and witnesses observed Rash and his brother, Marquis Osborne, flee the scene in a white SUV.[1] The next day the second incident occurred when Rash dropped Osborne off at the Milwaukee Police Department (MPD) District #4 station for a meeting with his probation agent. Rash was parking on the street nearby when unmarked police vehicles drove up; Rash accelerated onto the sidewalk and lightly struck a pedestrian with his vehicle. His vehicle was stopped when it hit a decorative boulder beside the sidewalk. Rash then fled on foot, but was eventually taken into police custody.

¶3      The case proceeded to a jury trial in December 2022. We recite from the testimony and argument relevant to this appeal. Former MPD Officer

---

[1] Osborne was also charged with first-degree intentional homicide as a party to a crime, for the death of Hinton. Osborne was tried separately after pretrial preparation showed that Osborne and Rash had antagonistic defenses preventing a joined trial.

Brian Brosseau, assigned to the Fugitive Apprehension unit, testified that while parked near District #4 in a black, unmarked MPD Ford Explorer, he observed an SUV drop off a man, circle the block, and park. Upon confirmation that the man entering the station was Osborne and that the SUV's license plate was connected to the investigation of Hinton's death, Officer Brosseau pulled up to the rear of the SUV on the driver's side. He testified that he activated the emergency lights, beeped the siren once, and he and his partner, in police uniforms, exited their vehicle to approach the SUV. Officer Brosseau stated that the SUV started moving, attempting to drive over the sidewalk, popping the curb, hitting and getting stuck on a decorative boulder, at which point the driver exited the SUV and fled.

¶4 Detective Andrew Molina, assigned to the FBI Federal Task Force under the MPD Special Investigation Division, testified that he observed the stop of Rash's SUV near District #4. Detective Molina, dressed in plain clothes in an undercover FBI vehicle, stated that two uniformed officers approached the SUV with the emergency lights in their squad illuminated. As the officers approached on foot, the SUV attempted to jump the sidewalk and drive away. He observed a man walking on the sidewalk in the flight path of the SUV, the pedestrian was struck by the SUV, and it stopped abruptly.

¶5 The State called Joseph Brown, the pedestrian on the sidewalk.[2] Brown testified he was walking back from picking up food during a visit to his mother-in-law's apartment, when he heard a commotion and the police yelling,

---

[2] We adopt the pseudonym used by the State to refer to the pedestrian, in accordance with the principles underlying WIS. STAT. RULE 809.86 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

"Freeze, get out the car, get on [sic] the car." He turned to look, and he saw a vehicle headed toward him at a high rate of speed. He was struck in the right hip by the vehicle, and he flew a couple of feet. He then saw the driver running away from police.

¶6 An issue was discussed outside of the jury's presence, namely that Officer Brosseau testified that he activated his body camera during this stop, but that footage had not been provided in discovery. Trial counsel requested all body camera footage months earlier and MPD responded that there was only post-arrest footage available. The prosecutor reported that he did not have Officer Brosseau's body camera footage, but he was attempting to find it. At the end of the day, trial counsel informed the court that she received the footage and would review it.

¶7 The next morning, trial counsel moved for a mistrial on the recklessly endangering safety count. She argued that not having the body camera footage prior to trial affected the defense's ability to prepare for trial. In preparing Rash's defense, counsel relied upon the fact that the police did not turn on their body cameras, which she considered inherently suspect. Counsel argued that the video was exculpatory to an extent: it showed a second vehicle boxing in Rash's SUV on the left, in addition to the disclosed vehicle behind him. Counsel also argued that factual inconsistencies with Officer Brosseau's testimony made the video exculpatory, namely that there was no evidence that the emergency lights or the siren were on before Rash accelerated onto the sidewalk. Trial counsel argued the footage was also inconsistent with a police report of the incident, authored by Officer Jose Viera, Officer Brosseau's partner. Officer Viera reported that the Explorer drove behind the SUV, initiated emergency lights and sirens, the officers exited the Explorer to approach the SUV, and observed the SUV drive up onto the sidewalk

4

¶8      The State argued that remedies short of mistrial could be sufficient, such as moving the footage in, presenting Officer Viera's report, and let the defense argue the meaning.  The circuit court stated that it did not "understand how this [footage] is exculpatory in any material way."  The court stated that the late disclosure of the footage was a discovery issue, but prior to Officer Brosseau's testimony, there was no inconsistency.  Ultimately, the court denied the motion for mistrial.  The court found that the late disclosure did not rise to the level of prejudice to declare a mistrial, and the footage was inculpatory, not exculpatory.

¶9      Officer Brosseau was recalled as a witness.  During his testimony, trial counsel played the body camera footage.  When Officer Brosseau was asked if he could hear a siren or see emergency lights, he testified that he did not know if the body camera would have picked up the siren and he would not have been able to see the lights from his vantage point.  He noted that when emergency lights are activated, the siren only alerts once and only stays on if manually switched on.  When asked if he heard the siren inside the car, he said he did not and acknowledged that in his experience driving a police vehicle with the siren on, he could hear the siren inside the car.

¶10     Rash testified in his own defense.  He asserted self defense to both the homicide and the endangering safety counts.  He testified that after dropping his brother off at the police station, he was attempting to park when he noticed two vehicles with dark tinted windows headed for him.  Rash did not see any lights or hear sirens, he was afraid he was being ambushed, so he accelerated, jumped the curb, braked to avoid the man on the sidewalk, and ran his car into a decorative boulder.  Although he realized it was the police when they exited their vehicle and announced they were police, he fled because he did not think the police would believe his story.

¶11    The jury ultimately found Rash guilty of the lesser included offense of first-degree reckless homicide as a party to a crime and second-degree recklessly endangering safety. The court sentenced Rash to concurrent sentences of 46 years on the homicide count, divided as 32 years of initial confinement and 14 years of extended supervision; and 8 years on the endangering safety count, evenly bifurcated between initial confinement and supervision. Rash now appeals.

## DISCUSSION

¶12    Rash argues that the circuit court erroneously exercised its discretion when it denied his motion for mistrial. "A motion for mistrial is committed to the sound discretion of the circuit court." *State v. Ford*, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61. "An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record." *Id.* When "determining whether to grant a mistrial, … the circuit court must decide, in light of the entire facts and circumstances, whether the defendant can receive a fair trial." *Id.*, ¶29. The question before the court is whether "the claimed error is sufficiently prejudicial to warrant a mistrial." *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (citation omitted).

¶13    Rash argued that his defense to the recklessly endangering safety count was that it was reasonable that he attempted to drive away from the approaching vehicles because he feared it was an ambush in retaliation for the shooting the previous day. A crucial issue then was the timing of when Rash accelerated onto the sidewalk in comparison to when the police identified themselves by activating emergency lights and sirens, appearing in police uniforms, or verbally announcing they were the police. Rash asserted that he tried to drive away when he saw unknown cars approaching him, before he saw

emergency lights or sirens. In contrast, Office Brosseau testified that he activated the emergency lights and siren before he and his partner exited their vehicle and that Rash accelerated after that.

¶14 Rash argues that his theory of defense was gutted by Officer Brosseau's testimony mid-trial that body camera footage of the stop existed. Because counsel requested body camera footage from the police and none was found, the defense theory was formed around presenting that the police testimony should not be believed because Office Brosseau had an obligation to activate his body camera and he did not.

¶15 The circuit court concluded that Rash's assertion that he could or would have formulated his defense differently was insufficient to warrant a finding that there was prejudice to the point of unfairness.[3] The court concluded that this was an inadvertent discovery violation and that the footage itself was inculpatory, not exculpatory. The court expressed uncertainty about the materiality of the emergency lights, but to the extent that the defense posited that Rash's acceleration onto the sidewalk was not reckless because there were no emergency lights or sirens announcing these vehicles as police, the defense can show the footage to the jury and argue its meaning.

¶16 When we consider the circuit court's decision to deny Rash's motion for mistrial in the context "of the entire facts and circumstances," the court did not

---

[3] When the State fails to disclose evidence in discovery, the sanction is typically exclusion of that evidence. WIS. STAT. § 971.23(7m). However, here, excluding the body camera footage would not have helped Rash and was not a practical alternative to mistrial. The State notes that Rash does not argue that the case should have been dismissed for a statutory discovery violation, § 971.23, or a **Brady** disclosure violation, **Brady v. Maryland**, 373 U.S. 83 (1963).

erroneously exercise its discretion. *See Ford*, 306 Wis. 2d 1, ¶29. "[N]ot all errors warrant a mistrial[.]" *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998). "[T]he law prefers less drastic alternatives [to mistrial], if available and practical." *State v. Bunch*, 191 Wis. 2d 501, 512, 529 N.W.2d 923 (Ct. App. 1995). Here, the court employed reasonable steps to remedy the late disclosure of the body camera footage including admitting the footage and allowing Officer Brosseau to be recalled as a witness. We consider this adequate because the footage is not clearly exculpatory and Rash has not demonstrated how it affected his trial preparation. As the circuit court stated, "One could almost always argue that they might have done something a little differently[.]" In this case, Rash "is entitled to a fair trial, not a perfect trial," and we conclude he received that. *See State v. Hanson*, 2000 WI App 10, ¶20, 232 Wis. 2d 291, 606 N.W.2d 278.

¶17 The body camera footage is not clearly exculpatory for Rash. The record reflects that the footage did not match Officer Brosseau's testimony; however, the material question was whether Rash behaved recklessly or reasonably when he accelerated onto the sidewalk and hit a pedestrian. Detective Molina testified that he saw two uniformed officers exit the squad while the emergency lights were illuminated and approach Rash's vehicle on foot, at which point the SUV drove onto the sidewalk and attempted to flee. Brown testified that he heard officers yell, "Freeze, get out of the car" behind him, he then turned, saw the vehicle approaching him, was struck (and saved by the boulder). While Officer Brosseau's body camera footage does not entirely match his testimony, Detective Molina's and Brown's testimony support that it was clear from their vantage points that the police were identified as police before Rash accelerated onto the sidewalk. Further, the State argues that Rash's defense was not

prejudiced because he was able to show the footage to the jury and use it to challenge the credibility of Officer Brosseau's testimony and support Rash's testimony that he feared he was being ambushed and he accidentally struck the pedestrian while acting in self defense.

¶18    Although Rash argues that the late disclosure of the body camera footage affected trial preparation, we conclude that he has failed to demonstrate prejudice to warrant a mistrial. The record reflects that trial counsel's opening statement did not mention that police testimony would be less credible for failing to activate a body camera, but focused on Rash's reasonable belief that he faced ambush and needed to flee in defense of his life. As a result, Rash's defense was not undermined by an inconsistency. Rash testified that he accelerated before realizing it was the police. In trial counsel's closing statement, she echoed her original argument on Rash's reasonable actions in self defense, noting that the jury had seen the body camera footage and that it was not "clear if Mr. Rash would have been able to hear the sirens or see the lights." Rash has not shown how his trial preparation was prejudiced.

¶19    We conclude that the circuit court's decision to deny Rash's motion for mistrial was a reasonable exercise of discretion under the facts and circumstances of the case. The circuit court carefully considered the motion for mistrial, heard "arguments and counterarguments from both parties, allowing each attorney ample time to make their case outside the presence of the jury." *Debrow*, 408 Wis. 2d 178, ¶16. The court assessed remedies and concluded that the late disclosure was not sufficiently prejudicial as to warrant a mistrial. The court considered the facts and arguments, the court did not make an error of law, and the court's decision reflected a rational reasoning process. *See id.*, ¶18.

**CONCLUSION**

¶20 The circuit court did not erroneously exercise its discretion when it denied Rash's motion for mistrial. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.