STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael A. DeLAIN, Defendant-Appellant.†

Court of Appeals

*No. 03–1253–CR. Submitted on briefs February 3, 2004.—
Decided March 23, 2004.*

2004 WI App 79

(Also reported in 679 N.W.2d 562.)

† Petition to review granted 6-8-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Christopher G. Wren,* assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Michael DeLain appeals from a judgment of conviction after a jury trial for two counts of sexual exploitation of a patient by a therapist and one count of obstructing justice and from an order denying postconviction relief. He raises four arguments: (1) there is insufficient evidence to sustain one of the counts of sexual abuse by a therapist; (2) his trial counsel was ineffective; (3) the prosecutor's "golden rule" argument in closing arguments mandates a new trial; and (4) a new trial is warranted because the real controversy has not been fully tried or justice has miscarried. We affirm the judgment and the order.

### BACKGROUND

¶ 2. DeLain was a psychologist in Green Bay whose eleven-year practice focused on helping young people with emotional problems. Jennifer F., a sixteen-year-old child, sought counseling from DeLain to address relationship problems with her father and her adult boyfriend. DeLain met with Jennifer four times in April 2001. After the fourth session, on April 25, Jennifer told her boyfriend and her family that DeLain sexually assaulted her and she no longer wanted to see him. Jennifer and her parents went to the police, who suggested that Jennifer return to another counseling

361

session while she secretly wore a wire. On May 2, she did so and that session was both video and audio recorded.

¶ 3. The State charged DeLain with four crimes: two counts of sexual abuse by a therapist on April 25 and May 2, contrary to Wis. Stat. § 940.22(2);[1] one count of sexual intercourse with a child age sixteen or older on April 25, contrary to Wis. Stat. § 948.09; and one count of obstructing justice, contrary to Wis. Stat. § 946.41(1). At trial, Jennifer recounted the numerous sexual contacts DeLain had with her during the April 25 and May 2 sessions. DeLain's defense was that Jennifer fabricated the allegations because DeLain indicated he was required to report that she was having sexual relations with an adult to the authorities.

¶ 4. The jury largely believed Jennifer F. and convicted DeLain of both counts of sexual abuse by a therapist as well as the obstruction of justice charge, but acquitted him of the sexual intercourse with a child sixteen or older charge. After sentencing, DeLain filed a motion for postconviction relief seeking an order vacating his convictions. He appeals the denial of that motion.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE ON COUNT I

¶ 5. DeLain first argues there was insufficient evidence to prove he had sexual contact with Jennifer F. on May 2, contrary to Wis. Stat. § 940.22(2). Section 940.22(2) states:

> Any person who is or who holds himself or herself out to be a therapist and who intentionally has sexual

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

contact with a patient or client *during any ongoing therapist-patient or therapist-client relationship,* regardless of whether it occurs during any treatment, consultation, interview or examination, is guilty of a Class C felony. Consent is not an issue in an action under this subsection. (Emphasis added.)

¶ 6. He claims that because Jennifer F. was at the May 2 counseling session at law enforcement's request, the statutorily required "ongoing therapist-patient . . . relationship" no longer existed. *See id.* He contrasts a genuine relationship from that of a "feigned relationship," noting the latter is what was present on May 2. DeLain argues it is not enough that he merely believed this relationship continued because "a 'relationship' is a two-way street." Thus, he reasons, because Jennifer F. was present not as a patient but as an agent of the police, the State cannot prove there was an ongoing therapist-patient relationship.

¶ 7. DeLain also supports his argument by referencing federal conspiracy law. DeLain observes a conspiracy requires an agreement between two or more people to commit an unlawful act. *See, e.g., United States v. Mahkimetas,* 991 F.2d 379, 383 (7th Cir. 1993). Thus, "there is no real agreement when one 'conspires' to break the law only with government agents or informants." *Id.* DeLain observes it is undisputed that Jennifer F. attended the May 2 counseling session as a police agent hoping to obtain incriminating evidence. Therefore, he argues the therapist-patient relationship no longer existed.

¶ 8. The State counters with three arguments. First, it maintains the statute should be construed to extend the relationship as a matter of law until one of the parties explicitly advises the other that the relationship has ended. The State claims that to conclude

otherwise would impede the statute's purpose of punishing therapists who do not abstain from sexual contact with patients. Second, because the statute provides that "[c]onsent is not an issue in an action under this subsection," and because the statute does not require the sexual contact to occur during "treatment, consultation, interview or examination," the State argues the statute is effectively a strict-liability crime. Third, the State argues DeLain's reliance on federal conspiracy law is misplaced because Wisconsin allows for a "unilateral conspiracy," that is, a conspiracy where two people agree to commit an unlawful act but one of those persons, cooperating with law enforcement officers, feigns agreement. *See State v. Sample,* 215 Wis. 2d 487, 500, 573 N.W.2d 187 (1998).

¶ 9. Thus, the State claims a conspiracy analogy actually supports its position. In any event, the State argues the evidence is sufficient to sustain the conviction on any of these grounds. We agree with the State that there is sufficient evidence to sustain the conviction, but do so for a different reason.

¶ 10. Both parties have overlooked the fact that WIS. STAT. § 940.22(2) proscribes therapists from "intentionally" having sexual contact with a patient or client during any ongoing therapist-patient relationship. Intentionally is a term of art when used in criminal statutes, *see* WIS. STAT. § 939.23(1), and is defined as "mean[ing] that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." WIS. STAT. § 939.23(3). The definition further provides that "the actor must have *knowledge* of those facts which are necessary to make his or her conduct criminal and which are set forth after the word 'intentionally.' " *Id.* (emphasis added).

364

¶ 11. In Wis. Stat. § 940.22(2), the words "patient" and "ongoing therapist-patient . . . relationship" follow the word "intentionally." Thus, in order for DeLain to have committed the crime, he must have known two facts: (1) that Jennifer F. was a "patient" and (2) that he and Jennifer F. had an "ongoing therapist-patient relationship." But to "know" these facts for purposes of the criminal code "requires only that the actor *believes that the specified fact exists.*" Wis. Stat. § 939.23(2) (emphasis added).

■

¶ 12. Therefore, we reject DeLain's argument that it was not enough for the State to prove he believed Jennifer F. was a patient and that he believed the last session was part of the continued therapist-patient relationship. At trial, DeLain stipulated that he was performing psychotherapy at all his sessions with Jennifer. It is also undisputed that at these sessions, DeLain believed Jennifer was a patient and believed these sessions were part of an ongoing therapist-patient relationship. Thus, even though Jennifer feigned her role as a patient at the last session, because the undisputed evidence is that DeLain believed the specific fact existed, namely that Jennifer was a patient and this was part of the ongoing therapist-patient relationship, any acts that occurred during this session were during an ongoing therapist-patient relationship as those terms are used in the statute. Consequently, we are satisfied the evidence is sufficient to sustain the conviction for sexual exploitation of a patient by a therapist that occurred on May 2.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 13. DeLain next claims he was denied effective assistance of counsel. "To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance and that the deficiency caused him prejudice." *State v. Brunette*, 220 Wis. 2d 431, 445, 583 N.W.2d 174 (Ct. App. 1998). "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶ 20 (citation omitted.)

¶ 14. We are highly deferential to counsel's performance and "must avoid the 'distorting effects of hindsight.' " *Id.*, ¶ 19 (citation omitted.) We are also guided by the principle that counsel's performance "need not be perfect, indeed not even very good, to be constitutionally adequate." *Id.*

¶ 15. A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Id.*, ¶ 21. We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* Findings of fact include "the circumstances of the case and the counsel's conduct and strategy." *Id.* Whether counsel's performance is constitutionally ineffective is a question of law we review de

novo. *Id.* DeLain has not contested any material findings of fact. Thus, we turn to whether his counsel was constitutionally ineffective.

¶ 16. DeLain claims his counsel was constitutionally deficient on two grounds: first, counsel failed to properly investigate and present evidence of exculpatory prior consistent statements DeLain made to coworkers; second, counsel failed to investigate and present expert evidence regarding the appropriateness of DeLain's therapy techniques.

¶ 17. As to the first ground, DeLain claims his counsel's failure to investigate witnesses who could corroborate his defense—that Jennifer F. fabricated the allegation because DeLain was going to report her to social services for having sex with an adult—was unreasonable. DeLain points out that his therapy notes for April 25, 2001, indicated he consulted with Dr. Valerie DeLain (DeLain's ex-wife who is a clinical psychologist) and Kristi Kovacs (a drug and alcohol counselor DeLain worked with previously). At the *Machner* hearing,[2] Valerie testified this consultation involved DeLain telling her how Jennifer F. threatened to accuse him of molesting her if he reported her sexual relationship with her adult boyfriend to authorities. Kovacs also testified to a similar conversation she had with DeLain. DeLain's counsel, however, did not present this evidence at trial because he never interviewed either of these witnesses regarding the consultation. Without producing these prior consistent statements at trial, DeLain claims his counsel performed deficiently.

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶ 18. DeLain's counsel testified that DeLain never revealed to him what he told Valerie or Kovacs, let alone that they could confirm Jennifer F.'s threats. In fact, the only thing DeLain told his counsel was that he told his co-workers and Kovacs he had a weird, strange, or odd session with Jennifer. He never told counsel there were witnesses who could confirm, through his prior statements, Jennifer's threats. DeLain's counsel interviewed all of DeLain's co-workers, which included Valerie, for a total of nearly eight hours. At no point did DeLain's counsel receive any intimation that these people had any relevant information regarding the allegations. In hindsight, it could be argued DeLain's counsel may have explored this area more, but when all his client told him was that he had a strange or odd session, it is not unreasonable for counsel to assume there would be little else to explore. Under these circumstances, DeLain's trial counsel did not perform deficiently.

¶ 19. DeLain also claims his trial counsel was ineffective because he failed to present expert evidence regarding the appropriateness of DeLain's therapy approach. DeLain utilizes "provocative therapy" in counseling youths.[3] DeLain observes his counsel knew the jury could view DeLain's provocative therapy techniques as inappropriate. To combat the jury's adverse emotional reaction, DeLain argues it was incumbent on his counsel to produce independent expert testimony to support the appropriateness of his therapy techniques. We disagree.

---

[3] It was undisputed at the postconviction proceedings that in provocative therapy, the therapist uses humor both to sensitize and desensitize the client to problematic cognitive, affective, and behavioral patterns. This is the key to provocative therapy—humor, jocular, whimsical, caring, supportive humor.

¶ 20. DeLain's counsel indicated his trial strategy was to avoid expert testimony as much as possible. Counsel indicated he was concerned how jurors would react to DeLain's therapy techniques and did not want them to pass judgment on his techniques or decide the case on whether DeLain was a good psychologist. In fact, to prevent the State from offering expert testimony in its case-in-chief, DeLain's counsel stipulated that DeLain was engaged in "psychotherapy" during the relevant time periods. This was a reasonable trial strategy. We will not "second-guess a trial attorney's 'considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel.' A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." *State v. Elm*, 201 Wis. 2d 452, 464–65, 549 N.W.2d 471 (Ct. App. 1996) (citations omitted).

¶ 21. But DeLain claims his counsel knew he was going to testify, and that part of his testimony would relate to the appropriateness of his techniques, thereby opening the door to the whole provocative therapy issue for the State to explore in rebuttal. Therefore, DeLain argues his counsel should have had an expert ready to refute the State's rebuttal expert.

¶ 22. Prior to trial, DeLain's counsel consulted with two forensic psychologists. Both were troubled by what they saw of DeLain's techniques on the videotape but were of the opinion that DeLain was nonetheless performing psychotherapy and was trying to help Jennifer F. One of these witnesses developed a scheduling conflict and was unavailable to testify at trial, but the other was ready and able to testify. DeLain's counsel indicated he did not use this witness because he felt he

did an effective job of impeaching the State's rebuttal expert witness. On cross-examination, DeLain's counsel showed the State's expert had not taken any courses, received any training, or read any literature on provocative therapy. In light of this cross-examination, we conclude DeLain's counsel acted reasonably as part of his trial strategy by not calling an expert to refute the State's rebuttal expert. DeLain was not denied effective assistance of counsel.

### III. "GOLDEN RULE" COMMENT

¶ 23. DeLain next claims the prosecutor's use of a "golden rule" argument during his closing argument requires reversal. Generally, a golden rule argument involves asking the jurors to place themselves in the position of someone claiming injury or damage and asking the jurors to determine what they would want as compensation. *See Featherly v. Continental Ins. Co.*, 73 Wis. 2d 273, 284, 243 N.W.2d 806 (1976). In a criminal case, a golden rule argument asks the jurors to place themselves in the victim's shoes. *See Rodriguez v. Slattery*, 54 Wis. 2d 165, 170, 194 N.W.2d 817 (1972). These statements are not allowed because they appeal to the jurors' sympathy for persons who have been injured or victimized by a crime.

¶ 24. In closing, the prosecutor criticized one of DeLain's defenses—that Jennifer F.'s allegations were more consistent with fabrications in light of her poor body image than with a true account of sexual assault—by stating:

> Finally, I'll end on what I consider to be the most ridiculous argument that I've heard in this case and it's also – it's sort of insulting, too, and that's the breast

argument. Are you gonna accept the notion that be-cause [Jennifer F.] doesn't relate in her testimony any breast touching she must be lying because she has a poor self-image about her breasts and, therefore, wouldn't say anything about breast touching. Does that make any sense to you at all. Is that anything more than just a – a – a desperate attempt to – to – to mislead you and to – to get you to think about anything but the evidence in this case. *How do you make that – how do you think that makes [Jennifer F.] feel sitting in the courtroom listening to that.* (Emphasis added.)

DeLain argues this was an improper golden rule argu-ment that so infected the trial with unfairness such that the conviction results in a denial of due process. *See State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996). Thus, he claims the trial court erred by failing to grant his motion to dismiss. We disagree.

¶ 25. The decision of whether to grant a motion for a mistrial lies within the trial court's discretion. *State v. Ross*, 2003 WI App 27, ¶ 47, 260 Wis. 2d 291, 659 N.W.2d 122. "The trial court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial." *Id.* (citation omitted). "The denial of a motion for mistrial will be reversed only on a clear showing of an erroneous use of discretion by the trial court." *Id.*

¶ 26. Following the State's brief remark, DeLain's counsel immediately objected and the prosecutor promptly withdrew the comment and apologized for making the statement. In fact, the State later urged the jury to weigh its decision solely on the evidence and to not be swayed by emotion. The circuit court instructed

the jury to "not be swayed by sympathy, prejudice or passion. You will be very careful and deliberate in weighing the evidence. I charge you to keep your duty steadfastly in mind and as upright citizens to render a just and true verdict." Because of the isolated nature of the remark, the State's immediate response, and because juries are presumed to follow the instructions, *State v. Smith*, 170 Wis. 2d 701, 719, 490 N.W.2d 40 (Ct. App. 1992), we conclude the trial court did not erroneously exercise its discretion by denying the motion for a mistrial.

## IV. DISCRETIONARY REVERSAL

¶ 27. Lastly, DeLain argues we should exercise our discretionary power of reversal to grant him a new trial because the real controversy was not fully tried or because justice has miscarried. *See* WIS. STAT. § 752.35. We exercise our power of discretionary reversal in exceptional cases. *Vollmer v. Luety*, 156 Wis. 2d 1, 12–13, 456 N.W.2d 797 (1990). For this court to reverse on the theory that the matter has not been fully tried, we need not determine whether the trial's outcome would be different on retrial. *Id.* at 19. Instead, for there to be a miscarriage of justice, "an appellate court must first make a finding of substantial probability of a different result on retrial." *Id.*

¶ 28. Under the circumstances of this case, we are not persuaded that the real controversy has not been fully tried or that there is a substantial probability there would be a different result on retrial.

*By the Court.*—Judgment and order affirmed.