**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 22, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP2181-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2016CF1133

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JASON PAUL HOLL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County:  TIMOTHY A. HINKFUSS, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jason Holl appeals from a judgment convicting him of second-degree sexual assault of a child and from a postconviction order denying

his motion for a new trial.[1]  Holl contends that: (1) the prosecutor's "condescending" question on Holl's cross-examination and so-called "golden rule" remarks and other comments made during closing argument were done to elicit sympathy from the jury, which violated Holl's due process rights; and (2) Holl's trial counsel's failure to object to the remarks constituted ineffective assistance of counsel.  We reject both arguments and affirm.

## BACKGROUND

¶2      The victim in this matter was Holl's then-thirteen-year-old stepdaughter, Anne.[2]  Anne testified that she awoke one morning to find Holl sitting on her bed, rubbing his hand up and down her back outside of her shirt.  While using his other hand to hold Anne's hand against her pillow, Holl proceeded to move his hand under Anne's shirt and to rub her back and stomach.  Eventually, Holl worked his way to touching and squeezing Anne's left breast and her buttocks.  While he was touching Anne, Holl leaned over and whispered in her ear that he loved her.  Anne said that the entire incident lasted about ten minutes and that she lay with her eyes closed most of the time, because she was afraid.  That same day, Anne told a friend and her grandmother what had happened, but she did not tell her mother right away because she did not want to ruin her mother's relationship with Holl.  Anne reported the incident to police eleven days after it happened.

---

[1] Holl also filed a second motion seeking a new trial on the basis of newly discovered evidence.  Notwithstanding that motion being mentioned in Holl's notice of appeal, Holl presents no argument on the matter, and it is not at issue on appeal.

[2] This matter involves the victim of a crime.  Pursuant to WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name.  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3    Holl took the stand in his own defense.  Holl acknowledged giving Anne a back rub over her shirt, touching her skin under her shirt at one point (which he claimed was accidental), patting her buttocks to "motivate" her to get up, and whispering that he loved her as he gave her a hug and kissed her on the temple.  Holl denied ever having touched Anne's breast or having any sexual intent, asserting that he just gave her a back rub because he was trying to improve his relationship with Anne, as he occasionally had discipline problems with her.

¶4    Holl testified during his direct examination that verbal fights with Anne "over basically nothing" sometimes would leave him frustrated "almost to the point of crying."  On cross-examination, the prosecutor asked Holl, "Is there something wrong with you emotionally or something?"  Trial counsel did not object to the question, and Holl answered that he was an emotional person.

¶5    During closing argument, the prosecutor made the following remarks:

> [1] Can you imagine if you were 13 and this was happening to you by a biological parent or step-parent, doesn't matter alright.…  You're … you're a little kid.
>
> [2] Do you remember what it's like when you were a teenager and how it's an awkward time.  Now you've got your step-dad giving you a massage.
>
> [3] [C]an you imagine if your dad or mom or somebody you love or grandma touching you like this when you're a kid?
>
> [4] Isn't that sad?  [Anne] [d]oesn't even want to tell her mom because … she knew how much her mom loved this guy.
>
> [5] It's sad, as I said a moment ago, that [Anne's] main concern when she was sexually assaulted was if I have to tell my mom this is going to be bad.  She had to bear that burden, okay.
>
> [6] Ten minutes, when you think about that, if you look at a clock and you think about for 10 minutes or even 5, can you

imagine 10 minutes of having this happen, touching all over her.

Trial counsel did not object to any of these remarks.

¶6 Following his conviction, Holl moved for a new trial on the grounds that the prosecutor's "something wrong with you" question and comments during closing argument violated Holl's due process rights and that Holl's trial counsel provided ineffective assistance by failing to object. At the postconviction hearing, trial counsel testified that he did not object during the prosecutor's closing argument because "there's a lot of latitude for both sides to give a closing argument," and counsel "didn't think there was necessarily an issue with what [the prosecutor] was saying" because he did not view the statements as "blatant" violations. In addition, trial counsel thought it might have been a "red herring" to object to the statements because the defense's position was that the incident did not happen the way Anne testified anyway. Trial counsel stated that he did not object to the question on cross-examination because he thought it made the prosecutor appear combative and aggressive and because Holl answered appropriately.

¶7 The circuit court denied Holl's motion for a new trial. The court observed that it was a reasonable strategy for Holl's trial counsel to refrain from raising what he viewed as "red herring" objections that could take the jury's focus off of the defense strategy of challenging Anne's interpretation of the incident, including that Holl did anything of a sexual nature. The court further concluded that even if some of the prosecutor's comments could be categorized as "golden rule" statements, the prosecutor's question and comments were not "overly" emotional and did not rise to the level of due process violations, given the context of the whole trial.

¶8     Holl now appeals, again asserting that the prosecutor's question and comments violated Holl's due process rights and that his counsel's failure to object to the question and comments constituted ineffective assistance of counsel. As Holl conceded before the circuit court, however, he forfeited the right to direct review of his due process claims by failing to raise contemporaneous objections to the prosecutor's question and comments. Moreover, Hall does not raise the due process claims within the plain error framework. We will therefore review Holl's due process arguments on appeal only within the framework of alleged ineffective assistance of counsel.

## DISCUSSION

¶9     To establish a claim of ineffective assistance of counsel, a defendant must prove two elements: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous. *See State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334. However, whether counsel's conduct violated the constitutional standard for effective assistance is ultimately a legal determination that this court decides de novo. *Id*. We need not address both elements of the test if the defendant fails to make a sufficient showing on one of them. *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12. In order to demonstrate deficient performance, a defendant must overcome a presumption that his or her counsel's actions fell within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, reasonable strategic choices made by counsel are virtually unchallengeable on appeal. *Strickland*, 466 U.S. at 690.

¶10    The ultimate question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." ***Harrington v. Richter***, 562 U.S. 86, 105 (2011) (citation omitted).  In making that assessment, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." ***Strickland***, 466 U.S. at 689.

¶11    Holl contends that prevailing professional norms required his trial counsel to raise due process objections to the prosecutor's question regarding whether there was something wrong with Holl emotionally, as well as to the six comments identified above that the prosecutor made during closing argument.  We disagree because we conclude counsel's assessments—i.e., that the challenged statements were not "blatant" due process violations and that raising objections to them could distract the jury from the primary defense position—were both reasonable.

¶12    It is true that arguments by a prosecutor that appeal to jurors' sympathies or prejudices, rather than relying upon the evidence, are improper. ***State v. DeLain***, 2004 WI App 79, ¶23, 272 Wis. 2d 356, 679 N.W.2d 562.  One such type of argument, commonly known as a "golden rule" argument, asks jurors to place themselves in the victim's shoes. ***Id.*** (citing ***Rodriguez v. Slattery***, 54 Wis. 2d 165, 170, 194 N.W.2d 817 (1972)).  Improper statements by a prosecutor "can rise to such a level that the defendant is denied his or her due process right to a fair trial." ***State v. Wolff***, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992).  Reversing a criminal conviction based upon a prosecutor's improper statements is not warranted, however, unless the remarks, taken in the context of the whole trial, "so

6

infected the trial with unfairness" as to make the resulting conviction unreliable. ***Id.*** (citation omitted).

¶13 Holl argues that his trial counsel's failure to object to the prosecutor's question and comments was not a reasonable strategy because counsel did not even recognize that the questions and comments impermissibly appealed to the jurors' sympathies or prejudices. That characterization of counsel's testimony, however, is not accurate. Counsel testified that although he may have been "concerned" with some of the prosecutor's comments, he did not believe that the prosecutor's question or comments rose to the level of "blatant" due process violations and he did not want to distract the jury with objections that did not further the defense position. This cost-benefit analysis of raising an objection is precisely the type of strategic decision that warrants deference under our standard of reviewing counsel's strategy.

¶14 Furthermore, we agree with trial counsel's assessment that the question and statements at issue did not constitute blatant due process violations. Even if some of the prosecutor's remarks may have been improperly phrased in a golden-rule format, it appears from the context in which they were made that counsel did not consider the question and remarks as so infecting the entire trial with unfairness as to render the verdict unreliable.

¶15 Significantly, although the challenged question and statements may have appealed to jurors' sympathies to some degree, they did not *only* appeal to jurors' sympathies. The question and comments also advanced legitimate arguments based upon the evidence in this case.

¶16 First, the prosecutor's question as to whether there was something wrong with Holl emotionally was a direct response to Holl's testimony that he would become so frustrated after having disputes with Anne over trivial matters,

7

almost to the point of crying. This question thus went to the credibility or plausibility of Holl's contention that he merely offered Anne a backrub in order to improve his relationship with her.

¶17 Second, the prosecutor's three comments inviting jurors to "imagine if" the conduct Anne described had happened to them when they were thirteen or a teenager, in conjunction with the two comments about how sad it was that Anne had to consider the impact her disclosure of the incident would have upon her mother, all related to the credibility of Anne's description of her response during the incident and her delayed reporting to her mother. In other words, the prosecutor was asking the jurors to consider whether Anne's testimony was credible based upon their common sense and life experiences regarding how a teenager would respond in the situation Anne had described.

¶18 Third, the prosecutor's comment asking jurors to look at a clock and imagine ten minutes of being touched all over their bodies went directly to the question of intent. That is, the length of time that the incident continued decreased the likelihood of an innocent intent and elevated the likelihood of a sexual intent.

¶19 In sum, we conclude that Holl's ineffective assistance of counsel claims fail because Holl has not met his burden to establish that counsel's performance was deficient. We therefore affirm the circuit court's denial of a new trial without addressing prejudice.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).