COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1888-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF401

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RYAN D. ZIMMERMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: JOHN F. MANYDEEDS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Ryan D. Zimmerman appeals from a judgment of conviction, entered following a jury trial, convicting him of three counts of possession of child pornography, one count of incest with a child, and one count of

sexual exploitation of a child. He also appeals a circuit court order denying his postconviction motion for relief.

¶2      On appeal, Zimmerman argues that the circuit court erred by denying his pretrial motion to suppress evidence derived from a cellphone search. He contends United States Supreme Court precedent regarding the Fourth Amendment dictates that law enforcement's continued seizure of his cellphone for approximately three years was unreasonable. We assume without deciding that the Fourth Amendment and binding precedent requires that law enforcement's continued seizure of an individual's personal effects be reasonable. Under the facts of this case, we conclude that law enforcement's continued seizure of Zimmerman's cellphone was reasonable.

¶3      Zimmerman consented to law enforcement's seizure and search of his cellphone approximately three years prior to the search he now challenges. At no point during the three-year period did Zimmerman revoke his consent or attempt to regain possession of his cellphone, despite having statutory means to do so. Thus, we conclude that law enforcement's continued seizure of his cellphone for approximately three years was lawful—i.e., reasonable—pursuant to Zimmerman's consent. To the extent that Zimmerman had a reasonable expectation of privacy as to his cellphone's contents at the time of the search he now challenges, we conclude that he voluntarily consented to the search.

¶4      We further conclude that the circuit court did not err by denying Zimmerman's motion for postconviction relief because he has failed to demonstrate that he received constitutionally ineffective assistance of counsel. Additionally, the circuit court did not err by denying his motions for a mistrial

based on allegedly improper comments during the State's rebuttal closing argument and a typographical error in one of the guilty verdict forms. We affirm.

## BACKGROUND

¶5 In June 2015, the State charged Zimmerman in Eau Claire County Circuit Court Case No. 2015CF624 with multiple counts, including child enticement. That same month, Zimmerman consented to law enforcement's seizure and search of his cellphone. However, law enforcement did not find anything of evidentiary value upon a search of the cellphone. In December 2015, Zimmerman was convicted in that case and was sentenced in April 2016 to 14 months of initial confinement followed by 10 years of extended supervision. He was released from initial confinement in 2017. The cellphone was never returned to Zimmerman, and he never attempted to retrieve it from law enforcement.

¶6 In January 2019, Bailey[1] disclosed to friends that Zimmerman had sexually assaulted her numerous times. Law enforcement learned of Bailey's disclosure, and she participated in three forensic interviews. A detective discovered that Zimmerman's cellphone was still in law enforcement's possession from the 2015 investigation[2] and that new technologies would permit a more extensive search of the cellphone than that conducted in 2015. Shortly thereafter,

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2023-24), we use a pseudonym to refer to the victim in this case. All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Specifically, the cellphone was held in an evidence room shared by the Eau Claire Police Department and the Eau Claire County Sheriff's Office. The Eau Claire County Sheriff's Office was responsible for both the 2015 and 2019 investigations.

the detective interviewed Zimmerman and obtained his consent to search the cellphone. During a subsequent search of the cellphone, law enforcement located images of suspected child pornography.

¶7    Based on Bailey's disclosure and the images found on the cellphone, the State charged Zimmerman with one count of repeated sexual assault of a child (Count 1); one count of incest with a child (Count 2); one count of child enticement (Count 3); three counts of possession of child pornography (Counts 4-6); one count of sexual exploitation of a child (Count 7); and one count of exposing a child to harmful material (Count 8).

¶8    Zimmerman filed a motion to suppress the evidence derived from the 2019 cellphone search, arguing that his consent was involuntary because law enforcement's continued seizure of the device was illegal. According to Zimmerman, law enforcement was statutorily required to "dispose" of his cellphone after it lacked evidentiary value in connection with the 2015 case, *see* WIS. STAT. § 968.19, and its continued possession beyond that point transformed the lawful seizure into an unlawful one, thereby tainting the voluntariness of his consent.

¶9    Following a multi-day evidentiary hearing, the circuit court denied Zimmerman's motion to suppress. The court determined that law enforcement had seized the cellphone, but the seizure of the cellphone was reasonable and Zimmerman's 2019 "consent was not tainted."[3] The court did not make any

---

[3] Zimmerman also argued that his consent was involuntary because his interview took place in an interrogation room and the cellphone was "away from Zimmerman's sight and control." The circuit court rejected these arguments, and Zimmerman does not renew them on appeal.

specific factual findings regarding its conclusion that law enforcement had seized Zimmerman's cellphone.

¶10    Zimmerman's case proceeded to a jury trial.  Following the close of evidence, the circuit court held a jury instruction conference with the parties.  The court asked the parties whether they had reviewed the verdict forms "to make sure that they're correct."  Defense counsel stated that he had reviewed the verdict forms and confirmed that "[t]hey look okay."  Following the court's reading of the jury instructions to the jury, the parties proceeded to their closing arguments.

¶11    Pertinent here, defense counsel made two objections to the State's rebuttal closing argument.  The first objection was made after the State characterized defense counsel's closing argument as being overly sympathetic to two witnesses—Bailey's half-brother and her stepbrother—both who denied witnessing Zimmerman act inappropriately with Bailey.  The State argued to the jury that defense counsel "attempted to draw a picture about two poor kids being called here to testify."  The State continued, "It's a lot for them to come here to testify.  Now think about [Bailey], 17 years old, a girl.  Remember when you were 17 years old.  Did you—."  At that point, defense counsel objected, arguing that the State was making a "golden rule" argument.

¶12    The circuit court called the parties into chambers for a sidebar, which the court later summarized on the record as follows: "We had a discussion about [defense counsel's objection], and [the State] assured me that [a golden rule argument] was not going to be happening, and it did not happen."  Following the sidebar, the State moved on from its previous comment and continued its rebuttal closing argument.

¶13    Defense counsel's second objection was made outside the presence of the jury at the conclusion of the State's rebuttal closing argument. Defense counsel objected to the State's argument to the jury wherein it commented, "And throughout this trial you have heard testimony about 'I do not recall,' 'I have no clue,' 'I cannot remember,' or 'I disagree.' They were unable to say, 'It was not me,' '[I]t did not happen.'" Defense counsel argued that the State was commenting on Zimmerman's interviews with law enforcement and that, by doing so, the State "shifted the burden to the [d]efense." According to defense counsel, the State was telling the jury, essentially, "that [Zimmerman] has a responsibility to say that it wasn't him, to speak up on his behalf," which the defense argued "violate[d] [Zimmerman's] right against self-incrimination." Defense counsel then moved for a mistrial, which the circuit court denied.

¶14    The jury acquitted Zimmerman on Counts 1, 3, and 8, but it found him guilty on Counts 2 and 4 through 7, each with the enhancer of lifetime supervision as a serious sex offender.

¶15    Defense counsel subsequently filed a postconviction motion for a mistrial on Count 7 after discovering that the guilty verdict form contained a typographical error. Specifically, the guilty verdict form for Count 7 mistakenly asked the jury whether Zimmerman was guilty of "*Possession of* Sexual Exploitation of a Child," as opposed to sexual exploitation of a child. (Emphasis added.) The next portion of the guilty verdict form addressed the enhancer for lifetime supervision as a serious sex offender and correctly identified the charge for Count 7, stating, "If you find the defendant guilty of Sexual exploitation of a child, you must answer the following question: Did the defendant commit the crime of Sexual exploitation of a child for the defendant's sexual arousal or gratification?" The not-guilty verdict form for Count 7 did not include the

typographical error. Defense counsel argued that the guilty verdict form's typographical error prejudiced Zimmerman "in light of the whole proceeding" because "[i]f even one juror believed that form to literally mean possession of sexual exploitation of a child, then the verdict is not unanimous and a mistrial must be declared."

¶16 The circuit court denied Zimmerman's postconviction motion for a mistrial on Count 7. The court determined that the jury instructions provided a correct statement of the law regarding Count 7 and did not include a typographical error. Moreover, the court stated that the jury received the not-guilty verdict form for Count 7, which correctly identified the charge. The court further commented that the error was not noted prior to the jury deliberations despite the fact that the parties had received the verdict forms in order "to catch errors like this."

¶17 After sentencing, Zimmerman, represented by appellate counsel, filed a motion for postconviction relief. Zimmerman argued that his defense counsel provided constitutionally ineffective assistance at trial by failing to: (1) seek a mistrial, curative instruction, or other remedy for the State's "golden rule" argument made during its rebuttal closing argument; (2) timely object to the State's comments regarding Zimmerman's interviews; and (3) notice the error in the Count 7 guilty verdict form prior to jury deliberations. Zimmerman asserted that defense counsel's first two errors entitled him to a new trial on Counts 2 and 4 through 7, while counsel's third error warranted a new trial on Count 7.

¶18 As discussed in greater detail below, the circuit court denied Zimmerman's motion for postconviction relief following a ***Machner***[4] hearing at which defense counsel testified. Zimmerman now appeals.

## DISCUSSION

### I. Motion to suppress evidence

¶19 Zimmerman first contends that the circuit court erred by denying his motion to suppress evidence derived from the 2019 search of his cellphone. He contends that the seizure of his cellphone transformed from lawful to unlawful sometime between 2015 and 2019. According to Zimmerman, any evidence derived from the 2019 search must be suppressed because his "consent to the second search was tainted by this unlawful seizure."

¶20 We review a circuit court's decision on a motion to suppress evidence under the Fourth Amendment using a two-part standard. ***State v. Wilson***, 2022 WI 77, ¶17, 404 Wis. 2d 623, 982 N.W.2d 67. "First, we will uphold a circuit court's findings of fact unless they are clearly erroneous." ***Id.***, ¶18. Second, the application of constitutional principles to those facts presents a question of law that we review independently of the decisions rendered by the circuit court. ***Id.***

¶21 The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

8

searches and seizures, shall not be violated."[5]  U.S. CONST. amend. IV.  "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  A seizure conducted without a valid warrant is presumptively unreasonable and is constitutional only if it falls under an exception to the warrant requirement.  *State v. Brereton*, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369.

¶22  Zimmerman concedes that law enforcement lawfully seized and searched his cellphone in 2015 pursuant to his voluntary consent. Notwithstanding this concession, Zimmerman argues that law enforcement's continued possession of his cellphone after the conclusion of his 2015 criminal case rendered the once-lawful seizure of his cellphone unconstitutional, pursuant to *Jacobsen* and *United States v. Place*, 462 U.S. 696 (1983).  He contends that "by the time [law enforcement] requested Zimmerman's consent to search" his cellphone in 2019, law enforcement's "continued seizure" of his cellphone "was unlawful."  According to Zimmerman, his consent to search his cellphone in 2019 was "tainted" by law enforcement's unlawful possession of the device.

¶23  Conversely, the State asserts that neither *Jacobsen* nor *Place* stand for the proposition that the Fourth Amendment protects an individual's interest "in regaining possession of property" once law enforcement constitutionally retains that property.  The State further contends that Zimmerman "cites no authority for

---

[5] Generally, we interpret article I, section 11 of the Wisconsin Constitution to provide the same constitutional protections as the Fourth Amendment.  *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97.  Zimmerman does not argue that this principle should not apply here.

the proposition that continued possession of a consensually seized piece of property becomes an unreasonable seizure absent withdrawal of consent" and that there "is no evidence that Zimmerman ever withdrew" his consent.

¶24 In *Place*, law enforcement seized a suspicious individual's luggage at an airport and held it for 90 minutes prior to securing a narcotics canine to conduct a "sniff test" for drugs. *Place*, 462 U.S. at 698-99. The Court held that the principles of *Terry v. Ohio*, 392 U.S. 1 (1968), permitted "warrantless seizures of personal luggage from the custody of the owner on the basis of less than probable cause." *Place*, 462 U.S. at 702. However, the Court held that the seizure at issue made pursuant to *Terry* was unreasonable because of "[t]he length of the detention of respondent's luggage … in the absence of probable cause," and it concluded that the evidence obtained from the "subsequent search" of the luggage after the canine sniff was inadmissible. *Place*, 462 U.S. at 709-10. In *Jacobsen*, the Court stated that *Place* stands for the proposition that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Jacobsen*, 466 U.S. at 124 (citation omitted).

¶25 The parties do not cite, and we have not found, a Wisconsin case addressing the proper scope of the holdings in *Place* and *Jacobsen* or whether the Fourth Amendment requires that law enforcement's continued retention of personal property that was lawfully seized be reasonable.

¶26 There is, however, federal case law addressing the scope of those holdings. In *Asinor v. District of Columbia*, 111 F.4th 1249, 1251, 1252 (D.C. Cir. 2024), on which Zimmerman heavily relies, five plaintiffs alleged that they

10

were arrested at a protest in August 2020, and, upon their arrests, law enforcement warrantlessly "seized their personal effects, including their cell phones." "The plaintiffs were quickly released, and [law enforcement] neither pressed charges nor sought warrants to search or continue to possess the phones." *Id.* at 1251. However, "[d]espite many phone calls and emails to the [law enforcement agency] and the U.S. Attorney's Office, the plaintiffs were unable to get their phones back." *Id.*

¶27 On appeal, the *Asinor* court held that *Place* and *Jacobsen* put forth a general rule that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Asinor*, 111 F.4th at 1255 (quoting *Jacobsen*, 466 U.S. at 124). Based on a detailed historical analysis, the court stated that there is a Fourth Amendment seizure if the government (1) meaningfully interferes with possessory interests in property in a way that (2) would have been understood to be an actionable property tort at common law when the Fourth Amendment was framed. *Id.* at 1252-54.

¶28 The *Asinor* court concluded that the plaintiffs' allegations satisfied both prongs of the seizure test and, therefore, law enforcement's continued retention of the plaintiffs' property was governed by the Fourth Amendment. *Id.* at 1254. First, law enforcement meaningfully interfered with the plaintiffs' possessory interests both by taking possession of their property and by keeping it. *Id.* According to the court, "for as long as [law enforcement] had control of the property, the plaintiffs could not possess it at all." *Id.* Second, the "prolonged, *unauthorized* possession" of the plaintiffs' property "would have been actionable at common law even if the initial taking had been lawful." *Id.* (emphasis added).

11

Furthermore, applying reasoning from *Jacobsen*, the court stated that the government continued to possess the plaintiffs' "property for many months after it lacked any legitimate interest in protecting officers or investigating possible criminal behavior. And after the government's legitimate interests dissipated, harm to the plaintiffs continued to accrue …." *Asinor*, 111 F.4th at 1255.

¶29 For purposes of this case, we assume without deciding that the Fourth Amendment requires that law enforcement's continued retention of personal property be reasonable. Given the particular facts of this case, however, we conclude that law enforcement's continued seizure of the cellphone was reasonable because Zimmerman never revoked his consent or attempted to regain possession of the device, despite having means to do so. Specifically, Zimmerman was permitted by Wisconsin statute to petition the circuit court for the cellphone's return. *See* WIS. STAT. § 968.20(1).[6] Zimmerman does not dispute the State's assertion that there is no evidence that he ever withdrew his consent or otherwise attempted to retrieve the cellphone once it was lawfully seized.

¶30 The fact that Zimmerman took no action to retrieve his cellphone, even after approximately three years of it being in law enforcement's possession, distinguishes the reasonableness of the seizure in this case from the seizures addressed in *Asinor* and *Place*. In particular, law enforcement's continued possession of the cellphone was, effectively, authorized by Zimmerman, whereas in those cases the seizure was made either pursuant to *Terry* or incident to a lawful

---

[6] Zimmerman cited WIS. STAT. § 968.19 in the circuit court to support his argument that law enforcement should not have possessed the cellphone for longer than "necessary for the purpose of being produced as evidence on any trial." He does not make this argument on appeal, and we will not consider § 968.19 further.

arrest. Moreover, in *Asinor*, the individuals sought to have their possessions returned, while Zimmerman did not. *See Asinor*, 111 F.4th at 1254.

¶31 Zimmerman cites no authority for the proposition that law enforcement's possession of property, pursuant to consent, transforms into an unlawful seizure under circumstances where the owner of that property makes no attempt to revoke his or her consent or otherwise regain possession of the property, especially when such remedies are available. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not consider arguments that are undeveloped and unsupported by citations to legal authority). In other words, applying the reasoning in *Asinor*, Zimmerman has failed to demonstrate that law enforcement's *authorized* possession of his cellphone would have been an actionable tort claim at common law. *See Asinor*, 111 F.4th at 1254.

¶32 On these facts, we cannot conclude that law enforcement's continued possession of the cellphone constituted an unreasonable seizure within the meaning of the Fourth Amendment.

¶33 To the extent that Zimmerman retained a privacy interest in the contents of his cellphone in 2019 after consenting to a search of the device in 2015, he voluntarily consented to law enforcement's 2019 search of its contents. A warrantless "search authorized by consent is wholly valid" under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). However, "[c]onsent, even when voluntary, is not valid when obtained through exploitation of an illegal action by police." *State v. Hogan*, 2015 WI 76, ¶57, 364 Wis. 2d 167, 868 N.W.2d 124.

13

¶34     We have already concluded that law enforcement's continued possession of the cellphone was reasonable.  Moreover, nothing in the record suggests that law enforcement unconstitutionally used its lawful possession of the cellphone itself to influence Zimmerman to provide access the device's contents.  Regardless, Zimmerman cites no authority supporting such a conclusion.  Because Zimmerman does not argue that his 2019 consent to search the contents of his cellphone was involuntary or otherwise obtained through the exploitation of an illegal action by police (at least not for any other reason than that law enforcement possessed the cellphone itself), we agree with the State that Zimmerman's 2019 consent to search the device was valid.  Thus, the circuit court properly denied Zimmerman's motion to suppress evidence.

## II.  Ineffective assistance of counsel

¶35     Zimmerman next challenges the circuit court's decision denying his motion for postconviction relief based on his defense counsel's alleged constitutionally ineffective assistance.  He raises the same three ineffective assistance of counsel claims that he did in his postconviction motion.  That is, Zimmerman argues that his defense counsel failed to: (1) seek a mistrial, curative instruction, or other remedy for the State's "golden rule" argument made during its rebuttal closing argument; (2) timely object to the State's comments regarding Zimmerman's interviews; and (3) notice the error in the Count 7 guilty verdict form prior to jury deliberations.

¶36     A criminal defendant has a constitutional right to the effective assistance of counsel.  *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.  To demonstrate that he or she was denied that right, a defendant must prove both that counsel's performance was deficient and that the deficient

14

performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *Breitzman*, 378 Wis. 2d 431, ¶37.

¶37 "To establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'" *Id.*, ¶38 (citation omitted). "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted). "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, ¶39 (citation omitted). However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted).

¶38 "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." *Breitzman*, 378 Wis. 2d 431, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.*

A. *Golden rule argument*

¶39 As outlined previously, defense counsel objected after the State commented during its rebuttal closing argument that it was "a lot for [Bailey's half-brother and stepbrother] to come here to testify. Now think about [Bailey],

15

17 years old, a girl. Remember when you were 17 years old. Did you—." Specifically, defense counsel stated, "Golden rule, Your Honor." In a sidebar, the State assured the circuit court that it would not make a golden rule argument. Following the sidebar, the State moved on from its previous comment and continued its rebuttal closing argument without any further issue regarding the golden rule.

¶40 On appeal, Zimmerman contends that "even without finishing its thought, the State led the jury in an improper direction" by inviting "jurors to consider themselves at 17" and "ponder what it might have been like … to sit on the witness stand in a sexual assault case." Zimmerman argues that defense counsel, in addition to lodging his objection, should have "take[n] the necessary next step" of "seeking a remedy" to address the State's comment. In particular, Zimmerman suggests that defense counsel should have: (1) asked the circuit court to instruct the jury to "disregard the State's improper comments"; (2) asked that the circuit court "instruct (or reinstruct) the jury … that they must decide Zimmerman's guilt" without "considering its sympathies for those involved"; or (3) requested a mistrial. Defense counsel testified at the ***Machner*** hearing that he did not consider seeking any of these remedies following his objection to the State's comment.

¶41 "In a criminal case, a golden rule argument asks the jurors to place themselves in the victim's shoes." ***State v. DeLain***, 2004 WI App 79, ¶23, 272 Wis. 2d 356, 679 N.W.2d 562. A golden rule argument is not allowed because it appeals to a jury's sympathy for persons who have been injured or victimized by a crime. ***Id.*** Under the facts here, however, we agree with the State that defense counsel did not perform deficiently by failing to seek an additional remedy after objecting to the State's potential golden rule argument. As the State argues,

"[D]espite Zimmerman's contention that the damage was done, counsel stopped the State before it could contextualize its comment" and impermissibly invite the jurors to place themselves in the victim's shoes. Defense counsel's objection limited the State's comment to, "Remember when you were 17 years old. Did you—." Without more, this comment did not amount to a golden rule argument.

¶42   It was reasonable for defense counsel to have deemed his objection sufficient to address the State's comment, as the objection prevented the State from making a golden rule argument. The constitutional right to the effective assistance of counsel required nothing more. *See **State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 ("Counsel need not be perfect … to be constitutionally adequate."). In fact, defense counsel's objection was effective because, after the sidebar, the State moved on from its previous comment and continued its rebuttal closing argument. In addition, Zimmerman does not provide a developed argument as to why a mistrial could or would have been granted if defense counsel had requested it, particularly in light of the fact that counsel's objection prevented the State from completing its potential golden rule argument. *See **Pettit***, 171 Wis. 2d at 646-47.

### B. Zimmerman's silence

¶43   After the State's rebuttal closing argument had finished, defense counsel objected outside the presence of the jury to the State's comment, "And throughout this trial you have heard testimony about 'I do not recall,' 'I have no clue,' 'I cannot remember,' or 'I disagree.' They were unable to say, 'It was not me,' '[I]t did not happen.'" Defense counsel requested a mistrial, arguing that the State's comments shifted the burden of proof to the defense and violated Zimmerman's right against self-incrimination. Defense counsel informed the

court that he did not "want to make another objection right there after I made a previous objection. We had talked in our sidebar to my previous objection, and for reasons that had been discussed with that sidebar, the Court doesn't like objecting in closing arguments."

¶44 The circuit court denied Zimmerman's mistrial motion and stated that the "jury was instructed that anything the attorneys say is simply that, argument. It's nothing more." Moreover, the court found that the State "was appropriate" in its comments and had not commented on Zimmerman's right to silence or shifted the burden in the manner that defense counsel had characterized. In addition, the court stated that it had instructed defense counsel during the sidebar "that if there was a need to object, you should object.… I wasn't cutting you off from objecting completely, but I wanted to make sure that there was a basis for it."

¶45 Defense counsel testified at the *Machner* hearing that he did not immediately object to the State's comments because the circuit court "had indicated that or implied in some way that [it] didn't like parties having their closings objected to. I believe he did tell me if I needed to, I could object again, but I believe there was some implication there." Defense counsel further stated that "the other part was I didn't … want to make another big objection and bring the attention to that."

¶46 On appeal, Zimmerman argues that defense counsel should have objected immediately after the State made its comments. According to Zimmerman, defense counsel should have then requested "an instruction that the jury disregard the comment or a reinstruction on the relevant law (i.e., that the jury must not consider Zimmerman's silence as evidence of guilt)." Zimmerman

further argues that had defense counsel immediately objected to the State's comments, the court "might" have sustained the objection and "decide[d] on its own to direct the jury to disregard the State's" comments.

¶47    The State contends that its comments, when viewed in context, "appear[]" to be referencing Bailey's half-brother's and stepbrother's inability to recollect certain events, not Zimmerman's decision not to testify in his own defense.  We agree that the record supports the circuit court's finding at trial that the State's comments were not in reference to Zimmerman's decision not to testify in his own defense.  Immediately prior to its comments at issue, the State argued:

> Let's talk about credibility.  You have heard from two young boys earlier today telling you certain things when being questioned by Defense Counsel.  And when we, the State, attempted to follow up with better questions, think about their answers.  Compare those with [Bailey's] answers.  When Defense Counsel asked her to clarify [certain answers], she attempted hard to provide you more details.  She tried to clarify those, and she was able to provide clarification.  Please remember that.

Then, the State argued that the jury had heard "throughout this trial," "I do not recall," "I have no clue," "I cannot remember," and "I disagree."  The State continued, "*They* were unable to say, 'It was not *me*, it did not happen.'" (Emphasis added.)

¶48    In context, the State likely meant to say that "[i]t was not *him*," not "me," as the circuit court implicitly found.  This finding is supported by the fact that Zimmerman did not testify, and the State began its comments at issue by stating, "[*T*]*hroughout this trial you have heard testimony* about 'I do not recall,' 'I have no clue,' 'I cannot remember,' or 'I disagree.'"  (Emphasis added.)

19

¶49     The testimony of Bailey's stepbrother and half-brother supports the State's argument on appeal.  Bailey's stepbrother testified that he "disagree[d] 100 percent" and "[d]isagree[d] entirely" with Bailey's memory of sexual assaults where she stated that he was present.  Bailey's stepbrother further stated that he could not "remember 100 percent" whether he "used to play on" Zimmerman's cellphone.  Similarly, Bailey's half-brother testified that he could not remember how long he lived at a residence where the sexual assaults occurred and that he could not remember the sexual assaults occurring.

¶50     In response, Zimmerman contends that the circuit court's finding that the State had not commented on Zimmerman's right to silence or shifted the burden does not "align" with the transcript.  He argues that none of the parties at trial, "including the prosecutor herself," "said 'It was not him' is what she meant.  The same goes for the postconviction hearing.  Regardless, it's the prosecutor's words, not her intentions that matter.  The words are all the jury heard."

¶51     Even if the circuit court's finding is clearly erroneous, Zimmerman cannot demonstrate that the State's comments violated his right against self-incrimination or that the State impermissibly shifted the burden to the defense by commenting on Zimmerman's silence because, at most, it is unclear to whom the State was referring in its comments.  For this reason, the State's comments were neither "manifestly intended to be" nor "of such character that the jury would naturally and necessarily take" the comments to be statements "on the failure of [Zimmerman] to testify."  *See **State v. Hoyle***, 2023 WI 24, ¶29, 406 Wis. 2d 373, 987 N.W.2d 732 (citation omitted).  Likewise, the State's comments were not "manifestly intended to be" or "of such character that the jury would naturally and necessarily take [them] to be" "adverse," meaning that Zimmerman's "silence is evidence of guilt."  *See **id.*** (citation omitted).

¶52   Therefore, defense counsel did not perform deficiently by failing to immediately raise an objection to the State's comments.[7]   *See* ***State v. Berggren***, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (stating that an attorney does not perform deficiently by failing to raise a meritless objection).

### C. Verdict form

¶53   The guilty verdict form for Count 7 mistakenly identified, in the first line, that the jury was presented with whether Zimmerman was guilty of "*Possession of* Sexual Exploitation of a Child," as opposed to sexual exploitation of a child.   (Emphasis added.)   The circuit court denied Zimmerman's postconviction motion for a mistrial and his ineffective assistance of counsel claim because it concluded that Zimmerman was not prejudiced by the typographical error, given that the jury instructions correctly outlined the law and charges and the not-guilty verdict form for Count 7 correctly identified the charge.

¶54   Zimmerman argues ofn appeal that the circuit court's reasoning was flawed and that had defense counsel discovered the typographical error prior to jury deliberations, it "is reasonably probable that correcting the verdict form error would have led the jury to a different conclusion about Count 7."   He further asserts that it is "particularly crucial" that "the jury concluded that Zimmerman had, in fact, possessed child pornography on his phone" but "acquitted [him] of most of the non-possession counts."

---

[7] Because we conclude that Zimmerman cannot demonstrate that the State violated his right against self-incrimination, we likewise conclude that the circuit court did not err by denying Zimmerman's motion for a mistrial.   *See* ***State v. Debrow***, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (stating that we review a circuit court's decision to deny a motion for mistrial for an erroneous exercise of discretion, which "may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record").

¶55 Zimmerman has failed to demonstrate that he was prejudiced by defense counsel's failure to correct the guilty verdict form for Count 7. As the circuit court stated, both the jury instructions and the not-guilty verdict form correctly identified that Zimmerman was charged with sexual exploitation of a child. Moreover, the jury instructions correctly identified the elements the State was required to prove for the jury to find Zimmerman guilty on that count, and they did not state that the element of possession was required. Furthermore, the jury instructions included a page titled, "Eight Counts: Separate verdict on each count required." (Formatting altered.) That form correctly stated that the verdict forms for Count 7 will read: "We, the jury, find the defendant, Ryan D. Zimmerman, not guilty of Sexual Exploitation of a Child, as charged in the seventh count of the Information"; and "We, the jury, find the defendant, Ryan D. Zimmerman, guilty of Sexual Exploitation of a Child, as charged in the seventh count of the Information."

¶56 Additionally, we agree with the State that it presented both physical and testimonial evidence at trial that the child pornography depicted Bailey. Consistent with this evidence, the State argued in its closing argument that "Count 7 is the sexual exploitation of a child count, and that count is for [Zimmerman] actually recording [Bailey] engaged in this sexually explicit conduct. So it's for [Zimmerman] actually creating the pictures that are the subject of Counts 4, 5, and 6" (the child pornography counts). Conversely, the remaining counts were alleged to have been separate incidents from those depicted in the child pornography. Thus, Count 7 was directly tied to the child pornography counts.

¶57 In short, the jury was presented with sufficient evidence to find that Zimmerman "record[ed] or display[ed] in any way a child engaged in sexually

22

explicit conduct with knowledge of the character and content of the sexually explicit conduct involving the child." *See* Wis JI—Criminal 2121 (2020). The guilty verdict form's incorrect inclusion of the words "possession of" would not have overcome the physical and testimonial evidence supporting a guilty verdict on Count 7, particularly in light of the accurate jury instructions and not-guilty verdict form.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.