COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2024AP1637-CR

STATE OF WISCONSIN

Cir. Ct. No. 2022CF805

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BENJAMIN ALAN GUNN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: JEFFREY R. WISNICKY, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Benjamin Alan Gunn appeals from a judgment convicting him, following a jury trial, of three counts related to threats he made

against a prosecutor. On appeal, Gunn argues that the circuit court erroneously exercised its discretion in two respects: granting a 43-day continuance beyond the deadline set by his prompt disposition request under the Intrastate Detainer Act (IDA), *see* WIS. STAT. § 971.11 (2023-24);[1] and denying his motion for a mistrial after a witness testified in violation of the court's pretrial ruling. For the following reasons, we affirm.

## BACKGROUND

¶2 In 2017, the State charged Gunn, in a case separate from the one underlying this appeal, with several counts based on allegations that he attacked four individuals with a machete. A jury found Gunn guilty of second-degree recklessly endangering safety, disorderly conduct (use of a dangerous weapon), and criminal damage to property. The jury acquitted Gunn on three additional counts of second-degree recklessly endangering safety.

¶3 In May 2022, the State charged Gunn in the present case with two counts of making a threat to a prosecutor and one count of stalking, each count as a repeater. The State alleged that Gunn sent two threatening letters to a Brown County prosecutor, Sally,[2] who prosecuted him in the 2017 case. Thereafter, Gunn was revoked from extended supervision and incarcerated in July 2022.

¶4 Because the charges against Gunn involved a threat to a Brown County prosecutor, the 2022 case was assigned to an out-of-county circuit court

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name.

2

judge on July 6, 2022, and was prosecuted by an assistant attorney general from the Wisconsin Department of Justice (DOJ). The State Public Defender's Office (SPD) appointed an attorney to represent Gunn in June 2022; however, that attorney withdrew at Gunn's request in August 2022 due to a "breakdown in communications [and] the avoidance of conflict of interest." A new attorney was appointed to represent Gunn on October 19, 2022.

¶5 The circuit court held a preliminary hearing on November 18, 2022. At the hearing, the parties initially scheduled a status conference for January 2023. However, Gunn then informed the court that sometime in September 2022, he had filed a request with Dodge Correctional Institution, where he was then incarcerated, for "[p]rompt disposition" under the IDA. *See* WIS. STAT. § 971.11. Gunn confirmed with the circuit court that he wanted a trial within 120 days of his prompt disposition request. *See* § 971.11(2).

¶6 In response, the State commented, "I think we'd have to schedule something a lot sooner than January at this point.… [W]e need a status in two weeks to set a trial date as soon as possible." Defense counsel explained that he would "see what [he] can do about … meeting with [Gunn] and reviewing the discovery before the holidays." The circuit court stated that the parties would end the hearing there and that the court's judicial assistant would coordinate with the Brown County Circuit Courts to determine space availability for the trial.

¶7 A status conference was held on December 2, 2022, and the circuit court set a trial for February 21, 2023. Regarding the IDA issue, the State advised the court that the Brown County District Attorney's Office had no record of Gunn's prompt disposition request. However, Dodge Correctional Institution informed the State that Gunn filed the prompt disposition request on September 6,

2022, and that the prison had forwarded the request to the Brown County District Attorney's Office. The prison provided a receipt showing that the prompt disposition request was delivered to the Brown County District Attorney's Office by certified mail on September 9, 2022. Based on the date of the certified mail receipt, the parties agreed that Gunn's trial should take place on or before January 9, 2023.

¶8      The State argued, however, that it would be in the interest of justice for the circuit court to grant a continuance beyond that deadline. In support, the State, through the DOJ, noted that it had not received notice of Gunn's prompt disposition request until the November 18, 2022 preliminary hearing; Gunn's request was sent to the wrong party; the Brown County District Attorney's Office could not act on Gunn's request because it was not prosecuting him; a delay was caused when Gunn's first defense counsel withdrew; and the February trial date was "not too far past" the IDA-based trial deadline.

¶9      The circuit court found that it was in the interest of justice to extend the trial deadline.[3] In support of its decision to grant the continuance, the court stated that it "tried mightily to find Mr. Gunn" an attorney but that it "took some time." Once an attorney was found, the trial date was "promptly" scheduled. In addition, the court noted the unique circumstances of the case—namely, that the presiding judge was from outside of Brown County, the DOJ was prosecuting the

---

[3] The circuit court noted that it believed that the February 2023 trial date complied with the IDA; however, it also made factual findings supporting its decision to grant a continuance and extend the deadline. Defense counsel stated he believed that a February 21, 2023 trial date was acceptable because, under the IDA, the 120-day deadline began to run on November 18, 2022. On appeal, the State does *not* adopt the position that the February 21, 2023 trial was within 120 days of receipt of Gunn's prompt disposition request.

case, and defense counsel "lives out of the area as well." The court explained that it was "balancing all of these things to try and get this case heard."

¶10 Prior to the jury trial, the State moved to admit evidence related to the 2017 case. Specifically, the State sought to admit evidence that Sally prosecuted Gunn in that case and that Gunn was convicted "of endangering the life of another with a machete." The State also sought to admit the trial dates and when Gunn was sentenced and released from prison. Ultimately, the circuit court ruled that the State could introduce, as panorama evidence, the date of the prosecution and that Sally could testify as to "some baseline statement" along the lines of, "I prosecuted [Gunn] for swinging a machete at another." The court prohibited the State from introducing the specific charges in the 2017 case, the classifications of the charges, or that Gunn was convicted of any of the charges. The court stated that the admissibility of the fact of Gunn's conviction could be revisited at trial if that evidence "becomes relevant in the context of which it comes in."

¶11 The trial commenced on February 21, 2023, as scheduled. Sally testified that she filed criminal charges against Gunn in 2017 in her capacity as a Brown County prosecutor. Sally then described the first threatening letter at issue, explaining that, at the time, she believed Gunn could have sent the letter because he "wasn't happy with me." The State asked Sally why she knew that Gunn was not happy with her, to which Sally stated, "So that criminal complaint I talked about, I filed charges on Mr. Gunn and had a jury trial with him. And he was convicted and not happy about that."

¶12 In addition, the State asked Sally how it made her feel once law enforcement matched Gunn's fingerprints with those on the letters. Sally

responded, "It made me concerned. The case that I had prosecuted him for he had been involved in taking a machete to attempt to attack several individuals. And when they jumped into a car[,] he was smashing the car with that machete, and so—." Defense counsel then interjected to request a sidebar, during which he argued that Sally's testimony had exceeded the scope of the circuit court's pretrial ruling regarding permissible evidence of the 2017 case. Defense counsel moved for a mistrial on this basis.

¶13 The circuit court found that Sally's testimony exceeded its pretrial ruling but that any erroneously admitted evidence did not unfairly prejudice Gunn. The court explained that it could "very well have let" the State introduce the fact of Gunn's conviction in the 2017 case and the facts underlying those charges but that it had been "very restrained and, frankly, conservative" in its pretrial ruling. Specifically, the court found that the fact of Gunn's conviction in the 2017 case was admissible as panorama evidence because it "told the entire story." Furthermore, the court found that evidence concerning the acts underlying Gunn's charges in the 2017 case was admissible other-acts evidence. In addition, the court stated that it would provide a limiting instruction, and it admonished the State, noting that it did not want the State to "reiterate this information." Consistent with its ruling denying Gunn's motion for a mistrial, the court provided the jury with the other-acts pattern jury instruction regarding the evidence that Gunn "was prosecuted for waving, threatening another with a machete." *See* WIS JI—CRIMINAL 275.

¶14 The jury found Gunn guilty of all three counts. The circuit court sentenced Gunn to a total of 13 years of initial confinement followed by 8 years of extended supervision. Gunn now appeals.

**DISCUSSION**

## I.  120-day trial deadline

¶15     The IDA "applies when a criminal case is brought against an inmate of a state prison and directs the warden, at the inmate's request, to send a written request to the district attorney for prompt disposition of the case." *State v. Butler*, 2014 WI App 4, ¶4, 352 Wis. 2d 484, 844 N.W.2d 392 (2013); WIS. STAT. § 971.11(1).  "The district attorney shall bring the case on for trial within 120 days after the receipt of the request subject to [WIS. STAT. §] 971.10." Sec. 971.11(2).

¶16     The continuance provision of Wisconsin's speedy trial statute, WIS. STAT. § 971.10(3)(a), applies equally to the IDA.  *Butler*, 352 Wis. 2d 484, ¶¶1, 7. "A court may grant a continuance in a case, upon its own motion or the motion of any party, if the ends of justice served by taking action outweigh the best interest of the public and the defendant in a speedy trial." Sec. 971.10(3)(a).  The speedy trial statute lists "[t]he factors, among others, which the court shall consider in determining whether to grant a continuance." Sec. 971.10(3)(b).  These factors are "[w]hether the failure to grant the continuance … would be likely to make a continuation of the proceeding impossible or result in a miscarriage of justice"; "[w]hether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that it is unreasonable to expect adequate preparation within the periods of time established by this section"; and "[t]he interests of the victim." *Id.*  "No continuance … may be granted because of general congestion of the court's calendar or the lack of diligent preparation or the failure to obtain available witnesses on the part of the state." Sec. 971.10(3)(c).

¶17    Whether to grant a continuance is a decision that this court reviews for an erroneous exercise of discretion. *See State v. Davis*, 2001 WI 136, ¶28, 248 Wis. 2d 986, 637 N.W.2d 62. An erroneous exercise of discretion results when the circuit court's decision is based on an error of law, does not consider the facts of record under the relevant law, or does not reason its way to a rational conclusion. *Id.* "[W]e may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶18    Gunn contends that the circuit court erroneously exercised its discretion by granting the State's motion for a continuance without applying WIS. STAT. § 971.10(3)(b) or the factors therein.[4] We disagree.

¶19    Following the parties' arguments with reference to the IDA, the circuit court appropriately considered several relevant factors in granting the State's continuance request for good cause. While only one of the factors considered by the court is expressly listed in WIS. STAT. § 971.10(3)(b), the statute states that the listed factors are not exclusive. Therefore, even if the court failed to expressly consider each of the three factors outlined by the statute, the factors the court did consider support its exercise of discretion in granting the State's continuance request for good cause.

¶20    To begin, the circuit court noted that Gunn's first defense counsel withdrew and that it "took some time" to appoint a second attorney. In fact, Gunn's second defense counsel was not appointed until October 19, 2022, 40 days

---

[4] We assume without deciding that Gunn did not waive or forfeit his IDA challenge, as the State argues on appeal.

after the Brown County District Attorney's Office received Gunn's prompt disposition request and less than 90 days before the January 9, 2023 deadline. The circuit court's consideration in this respect logically fits under WIS. STAT. § 971.10(3)(b)1., as the continuance provided defense counsel the time necessary to effectively represent Gunn at trial and, thus, avoid a miscarriage of justice.[5]

¶21 Gunn argues that there is no evidence in the record that his second defense counsel required additional time—i.e., beyond the January 9, 2023 deadline—to prepare for trial because counsel never informed the circuit court of this fact. Again, we disagree. At the November 18, 2022 preliminary hearing, defense counsel stated that he wished to review discovery (which he had not yet received), visit Gunn in person, and engage in preliminary negotiations with the State prior to the court holding another pretrial status conference. Before addressing Gunn's prompt disposition request, defense counsel sought a status conference for January 2023 in order to accomplish these tasks. At a December 21, 2022 status conference—19 days before the January 9, 2023 deadline— defense counsel explained that there was "a large amount of material" in the discovery received from the State and that he was "still working [his] way through it." Accordingly, the record demonstrates that Gunn's second defense counsel required time beyond the January 9, 2023 deadline to prepare for trial.

¶22 In addition, the circuit court considered the unique circumstances of the case, including the fact that the presiding judge, prosecutor, and defense

---

[5] Gunn argues that a miscarriage of justice "was only possible if the [circuit] court exercised its discretion to dismiss [the case] with prejudice." Gunn does not explain this position with citation to relevant statutory or case law, and we will not consider his argument further. *See* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not consider arguments that are undeveloped or unsupported by citations to legal authority).

9

counsel were traveling from outside of Brown County. The court further acknowledged that the parties were required to coordinate with the Brown County Circuit Courts to determine when a Brown County courtroom would be available for trial.

¶23 Gunn asserts that the circuit court's "scheduling" issue was not a valid reason for granting the State's request for a continuance and that there is no evidence that the court attempted "to schedule a trial prior to" the January 9, 2023 deadline. We disagree with Gunn's characterization of the court's decision. The court did not consider the "general congestion of the court's calendar," *see* WIS. STAT. § 971.10(3)(c), but, rather, it considered the logistics of scheduling Gunn's case given the reality that the presiding judge, prosecutor, and defense counsel were traveling from outside of the county and that they required preapproval from the Brown County Circuit Courts to use a courtroom for trial.

¶24 The record supports a finding that the trial could not have reasonably been scheduled before February 2023 given these constraints. Although the circuit court referenced its own calendar when scheduling the trial, the court also explained that its judicial assistant coordinated with the Brown County Circuit Courts to determine courtroom availability for the trial. The court stated that its judicial assistant "spoke with the Brown County officials" and that "we are looking at" February 21, 2023, for a trial date.

¶25 It is further worth noting that the circuit court's finding that the parties "promptly" scheduled a jury trial once the IDA issue was presented to the court is supported by the record. The parties moved their pretrial hearing dates, defense counsel completed his pretrial duties earlier than the deadline he initially requested, and the State obtained the presence of its witnesses at trial with fairly

short notice. No additional continuances were granted, and the record does not support a conclusion that the parties engaged in a "lack of diligent preparation." *See* WIS. STAT. § 971.10(3)(c).

¶26 Additionally, although not expressly considered by the circuit court, the prejudice to Gunn as a result of the short continuance was, at most, minimal. As the State contends, Gunn was serving his revocation sentence until October 2023, and the short continuance did not result in additional time in pretrial custody. *See State v. Urdahl*, 2005 WI App 191, ¶34, 286 Wis. 2d 476, 704 N.W.2d 324 (citing the prevention of oppressive pretrial incarceration as an interest that the right to a speedy trial protects). Likewise, the continuance also had no conceivable effect on the outcome of Gunn's trial because there is no suggestion that any witnesses became unavailable or that the delay impacted witness testimony. *See id.* We further agree with the State that, given the court's ruling granting the continuance request—and the factors it relied on in reaching that decision—the most likely "alternative to granting a very short continuance would have been dismissal" without prejudice and the refiling "of charges, which would have unnecessarily delayed proceedings further."

¶27 While IDA requests can only be initiated by individuals who are already incarcerated, Gunn cites no authority suggesting that prejudice to a defendant from a continuance is not a proper consideration when contemplating such a request. Indeed, when "exercising its discretion to dismiss a criminal case with or without prejudice for the State's failure to bring the case on for trial within the time period set forth in WIS. STAT. § 971.11(7), a circuit court should consider

a number of factors, including, but not limited to," "the harm to an accused resulting from the delay."[6] *Davis*, 248 Wis. 2d 986, ¶29.

¶28    In short, the circuit court did not erroneously exercise its discretion by granting the relatively short continuance of 43 days in this case. The record reflects that the court considered proper factors in granting the State's continuance request to conclude that the ends of justice served by granting the continuance outweighed Gunn's interest in a prompt disposition under the IDA. *See* WIS. STAT. § 971.10(3)(a).

## II. Motion for mistrial

¶29    "When faced with a motion for mistrial, 'the circuit court must decide, in light of the entire facts and circumstances, whether … the claimed error is sufficiently prejudicial to warrant a mistrial.'" *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (citation omitted). "We review a circuit court's decision to grant or deny a motion for mistrial for an erroneous exercise of discretion." *Id.*

¶30    Gunn asserts that the circuit court erroneously exercised its discretion by denying his motion for a mistrial because it "failed to address the

---

[6] Gunn further asserts that the State's reliance on prejudice to Gunn "ignores that having open cases directly affects inmate classification" under WIS. ADMIN CODE DOC § 302.11(14) (Nov. 2024). Be that as it may, this argument was not made before the circuit court, and we will not blindside the court by considering this new argument with respect to the court's discretionary decision. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). Furthermore, the record is devoid of any evidence that Gunn's inmate classification was adversely affected by the continuance or that it led to "more restrictions" during his incarceration, and his argument on this point is purely speculative. And, as we have already noted, the most likely alternative to granting the continuance would have been dismissal and refiling of the charges. Accordingly, Gunn would likely have been subject to criminal charges regardless of whether or not the circuit court granted the continuance.

falsity of [Sally's] testimony in its decision." Gunn contends that Sally's testimony "suggested Mr. Gunn engaged in behavior he was found not guilty of." Specifically, Gunn takes issue with Sally's testimony that he attacked "several individuals" because he was acquitted of three of the four counts of second-degree recklessly endangering safety. According to Gunn, Sally's testimony put defense counsel "in an impossible position": ignore the blatantly false statement regarding the number of individuals actually attacked or relitigate the 2017 case on cross-examination. Gunn also argues that Sally's testimony that Gunn smashed a car window with a machete "is an issue" because "it increase[d] the chance of the jury relying on an improper view of Mr. Gunn."

¶31 The State, for its part, contends that Sally's testimony was admissible, and it appears to suggest that her testimony did not violate the circuit court's pretrial ruling. The State also argues that the court properly concluded that any error in admitting Sally's testimony was not so prejudicial as to warrant a mistrial.

¶32 We conclude that regardless of whether Sally's testimony regarding the 2017 case exceeded the circuit court's pretrial ruling and whether the evidence was admitted in error, Gunn has failed to demonstrate that the court erroneously exercised its discretion by concluding that the testimony was insufficiently prejudicial to warrant a mistrial.

¶33 The circuit court's decision to deny Gunn's motion for a mistrial must be considered in the context of the principle that "not all errors warrant a mistrial and 'the law prefers less drastic alternatives, if available and practical.'" *See State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998)

(citation omitted). Consistent with this principle, the circuit court took two reasonable steps to limit the prejudicial effect of Sally's challenged testimony.

¶34 First, the circuit court admonished the State and noted that it did not want the State to "reiterate this information." The State complied with the court's directive. Accordingly, the arguably inadmissible evidence was, as the State contends, isolated. *See State v. DeLain*, 2004 WI App 79, ¶¶25-26, 272 Wis. 2d 356, 679 N.W.2d 562 (concluding that circuit court did not erroneously exercise its discretion by denying a motion for mistrial based, in part, on the "isolated nature" of the State's golden rule argument).[7]

¶35 Second, the circuit court provided a limiting instruction to the jury that prohibited it from considering evidence that Gunn "was prosecuted for waving, threatening another with a machete" to conclude that Gunn "has a certain character or a certain character trait and that [he] acted in conformity with that trait or character with respect to the offense charged in this case." The instruction further prohibited the jury from considering this evidence to conclude that Gunn "is a bad person and for that reason is guilty of the offense charged."

¶36 "We presume that juries comply with properly given limiting and cautionary instructions, and thus consider this an effective means to reduce the risk of unfair prejudice to the party opposing admission of other acts evidence." *State v. Marinez*, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399; *see also*

---

[7] We disagree with Gunn's assertion that defense counsel "had no way to know he would need to rebut" Sally's testimony. In ruling on the admissibility of the fact of Gunn's conviction, the circuit court stated that the scope of Sally's testimony could be revisited at trial if that evidence "becomes relevant in the context of which it comes in." Even so, the court minimized the prejudicial effect of Sally's challenged testimony by preventing the evidence of Gunn's conviction from being expounded on or addressed a second time.

*Genova v. State*, 91 Wis. 2d 595, 622, 283 N.W.2d 483 (Ct. App. 1979) ("Where the trial court gives the jury a curative instruction, … the appellate court may conclude that such instruction erased any possible prejudice, unless the record supports the conclusion that the jury disregarded the trial court's admonition.").

¶37    Gunn does not argue that the record supports a conclusion that the jury disregarded the circuit court's limiting instruction.[8]  Instead, he asserts that the limiting instruction was insufficient because it "did not inform the jury that [Sally's] testimony was not accurate" and was misleading.

¶38    We disagree that Sally's challenged testimony was inaccurate simply because Gunn was acquitted of three of the four counts of second-degree recklessly endangering safety.  Sally accurately testified that she filed charges against Gunn and that he was subsequently convicted.  After several questions and answers on direct examination, Sally then stated that the *charges* in that case involved "taking a machete to attempt to attack several individuals.  And when they jumped into a car[,] he was smashing the car with that machete."  Sally did not testify that Gunn was convicted for each offense with which he was charged or what the charges in the 2017 case included.

¶39    To the extent Gunn argues that the circuit court should have instructed the jury that the machete attacks for which Gunn was acquitted did not occur, we again disagree.  "[A]n acquittal only establishes that there was a

---

[8]  We question the State's assertion that the circuit court provided a "curative instruction" to the jury regarding the arguably inadmissible evidence.  The court did not inform the jury that it should disregard Sally's challenged testimony altogether.  Instead, the court permitted the jury to consider this evidence as other-acts evidence.  However, Gunn does not argue that Sally's challenged testimony was inadmissible as other-acts evidence, and he does not contend that the court should have provided a curative instruction, rather than a limiting instruction.

reasonable doubt in the jury's mind as to whether the defendant committed the prior crime, not that the defendant is innocent." *See **State v. Landrum***, 191 Wis. 2d 107, 118, 528 N.W.2d 36 (Ct. App. 1995). "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." ***Dowling v. United States***, 493 U.S. 342, 349 (1990).[9] As the State argues, "the acquittals do not even establish that the jury had a reasonable doubt as to whether Gunn attacked multiple people with a machete." "Instead, it seems just as likely that the jury simply was not certain Gunn's attack ended up creating a substantial risk of death or great bodily harm to these individuals."

¶40 Furthermore, Gunn does not respond to the State's argument that Sally's challenged testimony was insignificant when compared to the overwhelming evidence of Gunn's guilt on all three counts. *See **State v. Sigarroa***, 2004 WI App 16, ¶27, 269 Wis. 2d 234, 674 N.W.2d 894 (2003) (citing the "overwhelming evidence against" the defendant as grounds for supporting the circuit court's decision to deny a motion for mistrial). The State posits that "[a]ny possible prejudice resulting from the other-acts evidence came from the (admissible) fact that Gunn swung a machete at someone. The fact that there may have been more than one victim would not have moved the needle, especially given the overwhelming evidence of Gunn's guilt …." Because Gunn does not respond to the State's argument, we deem it conceded. *See **Charolais Breeding***

---

[9] Gunn argues that ***State v. Landrum***, 191 Wis. 2d 107, 528 N.W.2d 36 (Ct. App. 1995), and ***Dowling v. United States***, 493 U.S. 342 (1990), were "wrongly decided." We are not permitted to disregard that binding authority. *See **Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

***Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶41     Lastly, Gunn urges this court to adopt a rule that mistrial motions must "be granted when parties violate pretrial orders in an egregious manner." Even if we were to adopt such a rule, the circuit court never found that Sally or the State acted in an "egregious manner." Accordingly, there is no need to, as Gunn suggests, "send[] a message to litigants that pretrial orders are to be abided by and will be meaningfully enforced." Moreover, there is no need to "send[] a message" in this case because the circuit court determined that Sally's challenged testimony was, in fact, admissible, and that any error in admitting the evidence was not sufficiently prejudicial to warrant a mistrial. As explained, the court's discretionary decision to deny Gunn's motion for a mistrial is supported by the record, given the isolated nature of Sally's challenged testimony and the limiting instruction provided.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.